UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL HERRON, JR.,<br><br>        Plaintiff,<br><br>   v.<br><br>SMITH & NEPHEW, INC.;<br>DOES 1 to 60, inclusive,<br><br>        Defendants. | No. CIV. S-12-3052 LKK/KJN<br><br><br><br>**ORDER** |

Defendant moves to dismiss the amended complaint, asserting that it is preempted by federal law, and that it fails to state a claim. For the reasons that follow, the amended complaint will be dismissed with leave to amend.

**I.  BACKGROUND**

Defendant, Smith & Nephew, Inc., is the manufacturer of the Birmingham Hip Resurfacing System ("BHR System"), a medical device.[1] FAC ¶ 6. Defendant sought pre-market approval ("PMA")

---

[1] According to the U.S. Food and Drug Administration ("FDA"), hip resurfacing systems are "metal-on-metal hip implants." fda.gov/medicaldevices/safety/alertsandnotices/ucm335775.htm.

1

1 of the device, which was granted, with conditions, on May 9,
2 2006.  FAC ¶ 8.  See Approval Letter (ECF No. 29-3), Exhibit A to
3 the Declaration of Litsa Georgantopoulous in support of
4 Defendant's motion to dismiss.[2]  "Pre-Market Approval" is part of
5 a federal regulatory process created by the Medical Device
6 Amendments of 1976 ("MDA"), 21 U.S.C. §§ 360c, et seq.[3]

7    The Approval Letter states that "[f]ailure to comply with
8 any postapproval requirement constitutes a ground for withdrawal
9 of approval of a PMA," and that "[c]ommercial distribution of a
10 device that is not in compliance with these conditions is a
11 violation" of the federal Food, Drug, and Cosmetic Act.  Approval
12 Letter at 7.

13    On July 11, 2009, plaintiff underwent surgery to replace a
14 BHR System.  FAC ¶ 10.  Unbeknownst to plaintiff at the time, the
15 BHR System leaks metal ions into the tissues, causing various
16 types of serious injury.  FAC ¶ 14.  As a result, plaintiff
17 suffered pain and symptoms of cobalt poisoning.[4]  Id.  On May 10,

---

[2] Plaintiff references the Approval Letter in the complaint, but does not attach it.  Defendant attached the letter in a declaration in support of its motion to dismiss.  Plaintiff did not dispute the authenticity of the letter in his Opposition.  Accordingly, the Approval Letter is incorporated into the complaint by reference, and may be considered on the dismissal motion without converting the dismissal motion into one for summary judgment.  Merino v. El Dorado Hills County Water Dist., 2011 WL 5118604 at *2 (E.D. Cal. 2011) (Karlton, J.) ("[t]he 'incorporation by reference' doctrine permits the court to take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached' to the complaint") (quoting Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005)).

[3] Riegel v. Medtronic, Inc., 552 U.S. 312, 316-20 (2008).

[4] Defendant responds, in essence, "that's not a bug, it's a

2

1  2012, plaintiff's BHR System was removed, and he was told that
2  the device had failed.  FAC ¶ 12.  On June 1, 2012, a component
3  of the BHR System (the "acetabular component") was subject to a
4  market recall.  FAC ¶ 13.

5  On June 20, 2012, plaintiff filed a complaint in state court
6  alleging that defendant was strictly liable for the BHR System,
7  under a "Product Liability" cause of action.  ECF No. 1 at 15-16
8  (original complaint).  Defendant answered, asserting, among other
9  things, that the complaint was preempted by the Medical Device
10 Amendments of 1976 ("MDA") to the Federal Drug and Cosmetic Act
11 (the "Act"), 21 U.S.C. §§ 321, et seq., and federal regulations.
12 Id., at 59-60.

13 Defendant removed the action to this court on December 19,
14 2012.  Id., at 1.  After defendant moved to dismiss the case
15 based upon federal preemption, plaintiff amended his complaint.
16 The amended complaint contains two common-law claims.  The first
17 claim alleges "Negligence," asserting that the device was
18 designed or manufactured in violation of the MDA and its
19 implementing regulations.  The second claim alleges "Strict
20 Products Liability," asserting, in addition to the negligence
21 claims, that the device was "defective" and "unreasonably

---

feature."  Defendant seems to be arguing that this release of
cobalt ions into a patient's blood-stream "is a design feature of
the BHR system that was approved by the FDA."  See Reply (ECF
No. 31) at 3.  However, it does not point to any part of the
Approval Letter, or anything else, stating or even hinting that
leaking cobalt into a patient's blood-stream, and the resulting
pain, "tissue irritation, damage to the muscle and bone,
loosening of the implant, metal toxicity, blood poisoning, and
cardiomyopathy" – as alleged in the Complaint – are design
"features" approved by the FDA.

3

dangerous" when it entered the stream of commerce, due to defendant's alleged failures to comply with the MDA and regulations.

Defendant now moves to dismiss the amended complaint based upon preemption, and failure to state a claim.

## II.  STANDARDS

**A.  Dismissal.**

A dismissal motion under Fed. R. Civ. P. 12(b)(6) challenges a complaint's compliance with the federal pleading requirements. Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The complaint must give the defendant "'fair notice of what the ... claim is and the grounds upon which it rests.'"  Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

To meet this requirement, the complaint must be supported by factual allegations.  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009).  Moreover, this court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007).[5]

"While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements

---

[5] Citing Twombly, 550 U.S. at 555-56, Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations"), and Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("[I]t may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test" under Rule 12(b)(6)).

4

are themselves sufficient, and such statements are not entitled to a presumption of truth. Iqbal, 556 U.S. at 679. Iqbal and Twombly therefore prescribe a two-step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557).[6] A complaint may fail to show a right to relief either

---

[6] Twombly imposed an apparently new "plausibility" gloss on the previously well-known Rule 8(a) standard, and retired the long-established "no set of facts" standard of Conley v. Gibson, 355 U.S. 41 (1957), although it did not overrule that case outright. See Moss v. U.S. Secret Service, 572 F.3d 962, 968 (9th Cir. 2009) (the Twombly Court "cautioned that it was not outright overruling Conley ...," although it was retiring the "no set of facts" language from Conley). The Ninth Circuit has acknowledged the difficulty of applying the resulting standard, given the "perplexing" mix of standards the Supreme Court has applied in recent cases. See Starr v. Baca, 652 F.3d 1202, 1215 (9th Cir. 2011) (comparing the Court's application of the "original, more lenient version of Rule 8(a)" in Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) and Erickson v. Pardus, 551 U.S. 89 (2007) (per curiam), with the seemingly "higher pleading standard" in Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005), Twombly and

by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

**B.   Preemption.**

"There is a presumption against federal preemption of state laws that operate in traditional state domains." Stengel v. Medtronic Inc., 704 F.3d 1224, 1227 (9th Cir. 2013) (en banc).[7] Preemption of fields traditionally occupied by the States will not be found "unless that was the clear and manifest purpose of Congress." Id. (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)). Parties seeking to invalidate a state law claim based on preemption "bear the considerable burden of overcoming 'the starting presumption that Congress does not intend to supplant state law.'" Id. (quoting De Buono v. NYSA–ILA Med. & Clinical Servs. Fund, 520 U.S. 806, 814 (1997)).

### III.   ANALYSIS

**A.   The Law**

This lawsuit arises from the injuries allegedly caused by a BHR System, a Class III medical device.[8] The Medical Device Amendments ("MDA") to the Food, Drug and Cosmetic Act ("FDCA") "divides medical devices into three classes according to user

---

Iqbal), cert. denied, 132 S. Ct. 2101 (2012). See also Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (applying the "no set of facts" standard to a Section 1983 case).

[7] Petition for certiorari filed, 81 USLW 3652 (May 10, 2013) (No. 12-1351).

[8] The complaint does not allege that the device at issue here is a "Class III medical device," however, it appears that only Class III medical devices are subject to the PMA process. Also, both sides appear to agree that it is a Class III medical device.

6

1 risk." Stengel, 704 F.3d at 1226. Class III medical devices
2 pose the greatest risk, and are subject to a rigorous "pre-market
3 approval ["PMA"] process" of the Federal Drug Administration
4 ("FDA"). Id.

5     The PMA process results in a denial, an approval or an
6 approval "with conditions on distribution, marketing or sale."
7 Id. The PMA process includes a "risk-benefit assessment of the
8 device." Id. Thus, the FDA may "approve devices that present
9 great risks if they nonetheless offer great benefits in light of
10 available alternatives." Riegel v. Medtronic, Inc., 552 U.S.
11 312, 318 (2008).

12     Even after pre-market approval is granted, there are post-
13 approval statutory and regulatory requirements the manufacturer
14 must satisfy, in addition to any post-approval conditions the FDA
15 imposes on the specific device subject to the PMA. In general,
16 the manufacturer must refrain from manufacturing, packaging,
17 storing, labeling, distributing or advertising the medical device
18 "in a manner that is inconsistent with any conditions to approval
19 specified in the PMA approval order for the device." 21 C.F.R.
20 § 814.80. In addition, the manufacturer must report deaths and
21 serious injuries that the device "has or may have caused or
22 contributed to" and certain device malfunctions, and it "must
23 establish and maintain adverse event files," and "submit
24 specified followup." 21 C.F.R. §§ 814.84(a) (must comply with
25 Part 803 reporting requirements); 803.1(a) (general statement of
26 reporting requirements).
27 ////
28 ////

**B. MDA Preemption.**

The Medical Devices Amendments contain an explicit preemption clause which prohibits the States from establishing or continuing in effect:

> with respect to a device intended for human use any requirement— (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a).  However, the FDA regulations provide that the MDA "does not preempt State or local requirements that are equal to, or substantially identical to, requirements imposed by or under the act."  21 C.F.R. § 808.1(d)(2).

**1. The Claims That Are Subject to Preemption.**

The Supreme Court has established a two-step framework for determining whether a state law claim is subject to preemption by the MDA.[9]  First, has the federal government "established requirements applicable to" the medical device?  This first step is plainly met by the PMA process here, as pre-market approval "imposes 'requirements' under the MDA," and they are "specific to individual devices."  Riegel, 552 U.S. at 322-23.  The PMA Approval Letter in this case plainly and specifically refers to the BHR System:

> The Center for Devices and Radiological Health (CDRH) of the Food and Drug Administration (FDA) has completed its review of your premarket approval application (PMA)

---

[9] See Coleman v. Medtronic, 223 Cal. App. 4th 413 (2nd Dist. 2014), for an excellent discussion of the legal framework.

8

> for the Birmingham Hip Resurfacing (BHR) System. … [¶] We are pleased to inform you that the PMA is approved.

Approval Letter at 4. In addition, the letter imposes requirements for prescription use, labeling, and sale, distribution and use of the BHR System. Id., at 5. The letter also requires that the manufacturer conduct specified studies and training. Id., at 5-6. The letter further requires that the manufacturer "provide an analysis of adverse events and complaints … received regarding the BHR System." Id., at 6.

The second step is to determine whether plaintiff's state common-law claims are based upon California requirements "with respect to the device that are 'different from, or in addition to' the federal ones, and that relate to safety and effectiveness.'" Riegel, 522 U.S. at 321-22 (quoting 21 U.S.C. § 360k(a)). The "requirements" can be established by the state's common-law, and include claims for negligence and strict-liability. Riegel, 522 U.S. at 327-30 (rejecting at length, the argument "that the duties underlying negligence [and] strict liability … claims are not pre-empted even if they impose '"requirements,"' because general common-law duties are not requirements maintained '"with respect to devices"'").

**2. The State Claims Must "Parallel" Federal Requirements.**

Plaintiff's claims are therefore subject to MDA preemption. However, the claims can be rescued from preemption if they only impose duties that "parallel" those imposed by the MDA.

> State requirements are preempted under the MDA only to the extent that they are "different from, or in addition to" the

9

> requirements imposed by federal law. § 360k(a)(1). Thus, § 360k does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case "parallel," rather than add to, federal requirements.

Riegel, 552 U.S. at 330 (citing Lohr, 518 U.S. at 495); Stengel, 704 F.3d at 1228 ("the MDA does not preempt a state-law claim for violating a state-law duty that parallels a federal-law duty under the MDA"). The issue then, is whether the two state common-law claims plaintiff asserts – negligence and strict products liability – are for violating a state-law duty that parallels, and does not exceed, a federal-law duty under the MDA.[10]

   **C.   Arguments of the Parties.**

Defendant purports to make a preemption argument, asserting (in the titles to its arguments) that plaintiff fails to allege parallel claims. However, the text of defendant's arguments focus exclusively on plaintiff's alleged failure to comply with the pleading requirements imposed by Fed. R. Civ. P. 8, Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009). According to defendant, the complaint "simply recited a laundry list of federal regulations supposedly violated" by the defendant, without pleading specific facts to show a deviation between the

---

[10] This would appear to lead to the strange result that a medical device manufacturer can insulate itself from lawsuits arising from its own negligent design and manufacture of a medical device, no matter how outrageous its negligence, no matter how severely it injures patients, and no matter how many patients it injures or kills, so long as the manufacturer can somehow convince the FDA to sign off on a Pre-market Approval letter.

10

1  design or labeling approved in the PMA, and design or labeling he
2  received.
3     Plaintiff argues that his claims are not precluded because
4  he alleges state claims premised upon defendant's violation of
5  the federal law and regulations.
6     **D.   Other Cases Against this Defendant.**
7     Several other plaintiffs across the country (California,
8  Illinois, Ohio and New York), have sued defendant over the BHR
9  System.  Defendant's attempts to have those lawsuits dismissed on
10 preemption grounds have met with mixed success.
11           **1.   Chao v. Smith & Nephew, Inc.**
12    In Chao v. Smith & Nephew, Inc., 2013 WL 6157587 (S.D.
13 Cal. 2013) (Huff, J.), plaintiff, a surgeon, sought
14 indemnification from defendant Smith & Nephew, Inc. ("SNI"),
15 after he injured a patient while implanting the BHR System.  The
16 surgeon claimed that SNI provided him with a defectively designed
17 pair of surgical scissors, which caused the injury.  The court
18 granted defendant summary judgment on preemption grounds when
19 defendant present undisputed evidence that "the FDA had approved
20 the design of the scissors as part of the PMA process." Chao,
21 2013 WL 6157587 at *2.
22    The surgeon also claimed that SNI failed to train him in
23 conformance with applicable FDA training standards.  It was
24 undisputed that "as part of the PMA process for the BHR, the FDA
25 required Smith & Nephew to provide a surgical technique brochure
26 and instructive training videos to surgeons who would be using
27 the BHR system." Id., at *3.  The court denied summary judgment
28 because (1) plaintiff was asserting a state-law claim that

11

1  paralleled the federal duty, and (2) there was a material dispute
2  about whether the training provided complied with the PMA
3  standards. Id.

### 2. Comella v. Smith & Nephew, Inc.

In Comella v. Smith & Nephew, Inc., 2013 WL 6504427 (N.D. Ill. 2013) (Zagel, J.), the plaintiff was injured by her BHR System implant. Three years after the implant, she suffered severe hip pain, and "highly elevated chromium and cobalt levels" in her blood, which left her unable to walk, and then unable to walk easily, for an extended amount of time.

The court denied SNI's motion to dismiss the common law claim that defendant violated a duty to warn the FDA about "dangers that became manifest after the product was put on the market." Such a duty parallels the federal post-PMA duty to report such dangers to the FDA. Comella, 2013 WL 6504427 at *2. However, the court dismissed, as preempted, plaintiff's common law claim that defendant failed to warn the public and the medical community of the dangers, because that would create "an additional requirement," beyond that imposed by the MDA. Id.

### 3. Gale v. Smith & Nephew, Inc.

In Gale v. Smith & Nephew, Inc., ___ F. Supp. 2d ___, 2013 WL 563403 (S.D.N.Y. 2013) (Briccetti, J.), plaintiff was injured by his BHR System implant. Three years after the system was implanted, he suffered total hip dislocations and acute renal failure from cobalt poisoning. Gale, 2013 WL 563403 at *1. The court dismissed as preempted, plaintiff's state claims that the device was defective, breached an implied warranty, and that defendant committed fraud on the FDA.

12

The court denied the motion to dismiss the claim that defendant mislabeled a component of the device with an incorrect size. Such a claim would parallel the FDA post-PMA labeling requirement. Id., at *6. The court also denied the motion to dismiss the claim that defendant failed to warn doctors that the BHR System could cause renal failure. This claim "successfully threads the needle" between Riegel and Buckman Co. v. Plaintiffs' Legal Committee, 531 U.S. 341 (2001), by alleging that "he was injured based on S & N's failure to comply with the premarket approval's monitoring and reporting requirements." Id.[11]

**E.  Specific Claims.**

  **1.  Compliance with Rule 8, Twombly and Iqbal.**

Defendant's principal argument ignores the plain language of the complaint. The complaint does not simply list federal statutes and regulations and allege that defendant violated them. It alleges specific facts that are alleged to be in violation of the laws and regulations listed. For example, the complaint alleges that the defendant "[f]ailed to accurately label the carton containing the acetabular cup, in violation of 21 C.F.R. 820.120." FAC ¶ 18(i) (negligence claim) & 24(i) (strict product liability claim).

---

[11] Other cases dealing with the BHR System all rule consistently with these cases. See Elmore v. Smith & Nephew, Inc., 2013 WL 1707956 (N.D. Ill. 2013) (Gettleman, J.) (denying dismissal based upon preemption where the claims are based upon defendant's violation of the MDA regulations); Tillman v. Smith & Nephew, Inc., 2012 WL 6681698 (N.D. Ill. 2012) (Lefkow, J.) (dismissing claim based upon preemption, where the claims asserted only that the device was defective). Cf., Frederick v. Smith & Nephew, Inc., 2013 WL 6275644 (N.D. Ohio 2013) (Dowd, J.) (preemption argument is premature because it is unclear what devices are involved).

This plainly satisfies Rule 8, because it puts defendant on notice of exactly what it is alleged to have done. Defendant can defend against the allegation by, for example, providing specimens of the labels, or the testimony of employees who created or affixed the labels, and the PMA statement specifying what must be on the labels. Defendant's argument that plaintiff "merely recites a conclusory laundry list of federal regulations supposedly violated by Smith & Nephew" leaves the court with the definite impression that defendant must be referring to a different complaint than the one at issue here.[12]

The allegation satisfies <u>Twombly</u> and <u>Iqbal</u> as well, as there is nothing "implausible" about an allegation that a carton was mis-labeled, in violation of the law. The same applies to most of the remaining allegations, namely, Complaint ¶¶ 18(a)-(c), (h)-(m), and 24(a)-(c), and (h)-(m).

As for Complaint ¶¶ 18(d)-(g) and 24(d)-(g), plaintiff alleges that defendant failed to identify, capture and correct "the component discrepancy," in violation of 21 C.F.R. § 820.80(c) and (d). The court has no idea what "the component discrepancy" is, and it is nowhere explained in the complaint, the briefs or 21 C.F.R. § 820.80(c) or (d).[13] When plaintiff amends his complaint, he must ensure that his allegations make sense, and that he does not rely upon undefined jargon.

**2. Preemption.**

---

[12] Plaintiff understandably has come to the same conclusion. ECF No. 30 at 2 ("We must be looking at two different complaints").

[13] On the other hand, defendant does not complain that it does not know what it means.

14

The more serious Rule 8 argument is that there is no way to tell if plaintiff is attempting to impose requirements on defendant that exceed those of federal law. If true, the claims are preempted. The problem here is that some of the allegations are ambiguous, preventing defendant and the court from determining whether plaintiff is attempting to impose additional requirements on the device, or rather, is claiming that defendants have violated the requirements imposed by the PMA.

For example, plaintiff alleges that "[t]he BHR implanted in Plaintiff on July 11, 2009, was designed and/or manufactured in violation of the Act and regulations promulgated pursuant to it." Complaint ¶¶ 16 & 23. If plaintiff means by this that the device he received (and was implanted in him) differed in design and manufacture from the device that received pre-market approval, and that the design and manufacture of the device he received was made in violation of the Act, then there is no preemption. In that case, plaintiff is only alleging a parallel claim, namely, federal law requires that the device be manufactured and designed according to the standards laid out in the PMA, and, in violation of state negligence and product liability law, it was not.

However, if plaintiff means that he was implanted with the device whose design and manufacture received pre-market approval, then the claim for negligent design and manufacture is preempted. In that case, he is using state common law to impose a higher standard on the device than the MDA imposes. In Riegel, "[t]he court held that plaintiffs' claims were expressly preempted by the MDA because state law imposed a more stringent safety requirement than federal law." Stengel, 704 F.3d at 1230 (citing

1  Riegel, 522 U.S. at 325).

2  Otherwise, plaintiff is asserting that the FDA did not do
3  its job.  That is also preempted.  Only state claims that rely on
4  "traditional state tort law which … predated the federal
5  enactments" are not preempted.  See Buckman Co. v. Plaintiffs'
6  Legal Committee, 531 U.S. 341, 353 (2001).  A claim premised upon
7  the assertion that the FDA is not properly enforcing the MDA has
8  that federal enactment as "a critical element in the[] case," and
9  is therefore preempted.  Id.

10  Some of the other allegations suffer from this same
11  ambiguity.  See Complaint ¶¶ 18(d)-(j) and 24(d)-(j).  The
12  alleged failures and misconduct there could possibly be referring
13  to conduct where plaintiff disagrees with the FDA's conclusions,
14  or it could refer to post-PMA activities where defendant acted
15  contrary to the PMA's conditions.  For example the allegation
16  discussed above, that defendant "[f]ailed to accurately label the
17  carton containing the acetabular cup, in violation of 21
18  C.F.R. 820.120," is ambiguous.  Does it mean that the FDA erred
19  by allowing the inaccurate label to be placed on the carton?  If
20  so, the claim is preempted.  Or does it mean that defendant
21  changed the label after PMA approval, and placed a different,
22  inaccurate, label on the carton?  The latter is not preempted.
23  These allegations must be re-pled (or omitted if they are
24  preempted).

25  Other allegations clearly apply to post-PMA activity.  See
26  Complaint ¶¶ 18(k)-(m) and 24(k)-(m).  These allegations refer to
27  events that are reasonably read as occurring post-PMA, namely,
28  responding to "adverse incident reports," investigating "returned

BHR and components," and continuing to "inject BHR systems into the stream of interstate commerce when it knew, or should have known, that the BHR system was malfunctioning." However, the allegations could be clearer, by expressly specifying that they refer to post-PMA activities.

## IV.  CONCLUSION

Plaintiff's claims may or may not be partly preempted. Certainly, some portion of both claims are not preempted, because they are based upon state claims that parallel the federal requirements of the MDA and its implementing regulations. The remaining allegations are so ambiguous, it is not possible to tell if plaintiff is taking issue with the results of the PMA process, in which case they are preempted, or if he is taking issue with how defendant carried out PMA-imposed responsibilities, in which case, they are not preempted.

Accordingly, the court orders as follows:

1.  Plaintiff's motion to dismiss the amended complaint is **GRANTED**, with leave to amend;

2.  Plaintiff shall file his Second Amended Complaint within fourteen calendar days after the date of this order.

IT IS SO ORDERED.

DATED:  March 21, 2014.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

17